Good morning, Your Honors. Gaspar Garcia for Joe Palazzolo, the appellant in this matter. Your Honors, the accrual of the statute of limitations was when the relevant government authorities made their final determinations. And in this matter, it was after the arbitration set the final punishment for Mr. Palazzolo and the county adopted that decision. That was October 1, 2002. Didn't they already dock his pay before the arbitrator and the Board of Supervisors did their thing? Initially, yes, Your Honor. They did dock his pay, and that was returned to him with back pay later on. Well, why wasn't he injured when they took this action and docked his pay? Why didn't that start his clock running? Well, the cases that are helpful are Norco here and McCoy. And really, it's because it's good policy not to have someone rushing into court when they don't really know what their injuries are. Well, that's like a car accident. You can get hit in an intersection and you don't know whether you're going to need surgery, don't need surgery. You can go into surgery and you can get injured and later find out that it was malpractice, and that's when the accrual starts. I'm talking about your cause of action against the driver. Your cause of action accrues when you had the accident, not when you survive or don't survive the operation. You may have been unconscious, and when you wake up, that's when you know to sue. And that's what we're talking about. Yeah, but that's not the case I'm positing to you. What we're talking about is when he finally realizes what happened and that's the good policy here and that's what's set out in Norco. Well, unfortunately, it's not a matter of policy at this point. I think if it were a matter of policy, I might agree with you that it doesn't make a lot of sense to have to sue when you're in the midst of your administrative proceedings. And it may turn out that there were no damages at all. But we're not dealing just with policy. We're dealing with cases. And what cases do you think support your view that in the middle of a or when a department has made a determination? Yes, Your Honor. Thank you. Yeah. Norco talks about waiting, waiting for the possibility of finding a mutually acceptable solution. McCoy talks about defenses being rejected, a final written decision, and the final discipline being imposed. Well, in McCoy, it was a quick difference between the oral announcement of the decision by the chief or whoever the department was and the reduction of that oral announcement to a written decision. That's not a different level as if the chief's decision had then been appealed to the board of supervisors. And of the two cases, although McCoy involves a police officer and my client was also a police officer, I think the pattern that makes the most sense is Norco, and that is because in Norco, there was a statute that said that the plat had to be approved, that the county didn't do it. They had to do a writ. And three years later, after they went to the Supreme Court, then the county does what it's supposed to. And that follows the same sort of pattern here, is that my client had to force the county to do what it was supposed to do, and then they issued their final decision at that point. And that's kind of a similar pattern or actually the same pattern as opposed to any other cases cited, despite the fact that McCoy involves a police officer. And it was at that point, after the county adopted the final warning that my client then fully appreciated his injuries, I wanted to address the judicial estoppel argument that's asserted by the appellate in Sand City. They talk about oral argument with the district court. Breyer, before we get to that, I want to ask you, what is involved in this at this stage? Are all three causes of action still involved? For instance, the third cause of action is a petition to confirm the arbitration award. No, Your Honor. There was only a 20-second judgment in 1983. All right. Thank you. Yes, Your Honor. With respect to the judicial estoppel argument, the appellate in Sand City, I make the claim that I'm inconsistent with what I'm trying to argue now. And I think that it's fairly clear that things were unclear at that point. And I wanted to read a couple lines from the argument. And starting page 3, line 14, I say there wasn't an appreciable harm. The judge follows me and says, right, there was continuing harm. So it really seems to be talking past each other. At line 4, or page 4, rather, at line 10, the court's asking me. And the other thing I want to make sure I'm clear on is the arbitration proceeding is a right that your client has under the labor agreements that was applicable to him. But there was not a prerequisite to sue. In other words, he didn't have to do that. He could have not arbitrated and could have filed suit for violation of his civil rights at that point. And I say yes, Your Honor. But I think it's unclear enough that I was talking about an exhaustion of administrative remedies, while he may have been talking about accrual or ripeness. But it's sufficiently unclear, especially when you take into consideration that later on in the opinion, he reveals that he's been trying to apply Ricks and that has not been briefed by any of the sides. I asked for a briefing, and out of fairness, that's granted. So I think that if you apply the two standards, rather the two elements, that what I'm saying here is not clearly inconsistent with what I said at the summary judgment, as well as I didn't persuade a court to accept any position. That's all I have, Your Honor. Thank you. Thank you. Good morning, Your Honors. Tracy Kirkbride, Deputy County Counsel for the County of Monterey. On behalf of the defendants' appellees, the County of Monterey appellees, Your Honor. May it please the Court. Excuse me. The appellant plaintiff in this case argues that there wasn't a final decision from the county until after the arbitration and after the arbitrator had issued his recommendation. We would disagree with that position, Your Honors. We believe that Judge Fogle in the district court correctly held that the written notice of punitive action issued by the sheriff's office on December, in December of 2001, was the final written decision. Of the county? You just said there was no final decision. The Board of Supervisors' action was not the final decision of the county. I believe I said, Your Honor, that the appellant is arguing that there wasn't a final decision until after the arbitrator's award and after the county Board of Supervisors adopted the arbitrator's decision. We have a different view of when the final decision came down that is consistent with Judge Fogle's view. When was the final decision of the county? December 17th of 2001, when the sheriff's office issued its notice of punitive action to Mr. Palazzolo. And the county never made a decision after that? That was its final decision? Well, the actions that were taken by Deputy Palazzolo afterwards were a collateral review of his disciplinary proceedings that had been handed down by the sheriff's office. As Judge Fogle in the district court noted, the arbitration proceedings ---- So the Board of Supervisors is a collateral body that makes a collateral decision, not the final decision of the county? What they did in this case, Your Honor, was adopt the arbitrator's recommendation. Yeah. As a decision of the board. Right. And that's not the final decision of the county. That's some kind of collateral decision by the county? I would say that that is a final decision for the board. And is the board a higher agency of the county than the sheriff's department? In this case, they are, Your Honor. In every case, it's a higher ----  They're the highest body of the county. But my point is, Your Honor, that as Judge Fogle found, there was an action he took judicial notice of, there is no requirement in the Memorandum of Understanding between the Deputy Sheriff's Association of Monterey County and its employees through which the deputy in this case availed himself of the arbitration procedure. There's no requirement to exhaust that kind of administrative remedy before the deputy could file a suit. What happens to employees in the county who don't have a union if they're disciplined by their department? Do they have a remedy in the county of appealing to the board of supervisors? As far as I know, Your Honor, every employee in the county is either in a union or a bargaining unit. Is what? Is either in a union or a bargaining unit that bargains with the county administration. If it's not a union, what kind of a unit bargains? I myself am in a bargaining unit right now, Your Honor. We have representatives that negotiate with county administration and come up with our own Memorandum of Understanding, our own MOU. And we negotiate pay, all sorts of things with the county administration through that bargaining unit. And you have a right to go to the board of supervisors? Yes. Our representatives do it on our behalf. If you didn't have a unit under the county structure, does an employee have a right to go to the board of supervisors after there's a decision by the department? I would say ultimately yes, Your Honor. That hasn't occurred to my knowledge because, as I've said, I believe all our employees are members of the board. Well, why isn't that the final decision of the county then? Because the procedure that was taken here through the arbitration that led to the decision by the board was collateral review of the final decision by the department. Okay. I just have one other question. Can you tell me why in the letter from Mr. Sane of December 17th it says that any rights that you exercise will be considered simultaneously accorded under all the actual Well, that's not the sentence. Oh, yeah. Any rights that you exercise with respect to this proposed action will be considered, et cetera. Why is it called a proposed action in the letter that imposes the final discipline? I'm not sure I understand your question, Your Honor. Is it referring to a proposed action? No. I believe in that letter they, by law, they're required to tell the employee, advise the employee that they do have the right to appeal the decision if they so choose. It's certainly not mandatory, but it's an option they do have. If it's an appeal, then why is it a collateral action? Why isn't it just not the next step on the rung? Within, and, Your Honor, we believe that the case of Delaware State College v. Ricks controls in this matter. Under the reasoning of that case, and also what Judge Fogel found in the district court level, was that the arbitration proceedings in this case were a collateral review of the decision by the sheriff's office. You're just saying they called it a collateral review. I'm not understanding why it's a collateral review if you're saying that they have, as a matter of right, of which he was advised that he could go to the next step. It's an option they have. It's not mandatory. No one has to appeal, but, I mean, it doesn't make it collateral just because it's optional. I think in the... Just like Mr. Garcia lost in district court, you know, he can come here if he wants. If he doesn't want, he doesn't have to, but it's not a collateral attack. I think, under the reasoning of Judge Fogel and the reasoning of the Ricks case, that the review that was taken, such as in this case, couldn't influence or affect the decision by the sheriff's office itself. It would be a collateral, a subsequent decision, but that the actions that were taken, say, in this case through a grievance procedure of the arbitration, would be not able to influence the initial decision of the sheriff's office, and that's where I believe the reasoning making a collateral review would come in. Let me ask you this. Suppose he had sued the day after Sheriff, is it Soane? Is that how he pronounces it? Soane. Soane. Suppose he had sued right after Sheriff Soane had issued his notice of disciplinary action. If that came out December 17th, he would have brought a lawsuit December 18th. Wouldn't you have been within your rights to say, hey, it's too soon? We haven't lost yet. You don't know what the arbitrator is going to do. Again, the arbitration proceeding is not a requirement for him to file a suit. No, I understand that. But suppose he had already started the arbitration. Suppose it's – here's my scenario. December 17th, Sheriff Soane does his thing. December 18th, he brings an arbitration. December 19th, he files a lawsuit. Wouldn't you be well within your rights to say, what are you suing me now? We don't know – you don't know you've lost yet. I don't think we could have made that argument validly in a court of law, Your Honor, because as part of the MOU, the arbitration is not a requirement for him to file a suit. Your Honors, I see that my time is almost up on my part of the argument, and I'd like to give – Well, before you leave, I want to ask you. Your strongest case is Ricks, I gather. That's Winfield's controlling case, Your Honor. All right. Now, tell me why this doesn't distinguish Ricks. Ricks is a case in which the board of trustees, which was the highest decision-maker in the body, made a decision not to grant tenure. After that final decision was – or after the decision was made at the highest level in Ricks, then a grievance occurred, and the court said that the board of trustees could change its mind if it wanted, but that that was not a basis. It says it's apparent, of course, that the board indicated a willingness to change its prior decision if Rick's grievance were found to be meritorious. But the board had already made a decision. Now, here the highest decision-maker is the board of supervisors, which had not made any decision prior to its ultimate decision. Why isn't that case different from Ricks? Because I believe in Ricks that decision by their highest decision-maker was acquired in their process, and in this case it was not. It was an option that the deputy pursued, and again, we contend that the final decision had already come from the sheriff's office on December 17th of 2001. And it's fine simply because he was not required to take an appeal? Is that it in a nutshell? Right. Under the reason of the Ricks case, the McCoy case, and other cases to the Federal system, the final decision is when the agency sets forth, gives notice to the employee of the punishment or the punitive action that is they are going to be taking against that employee, and that's what the December 17th, 2001 notice was to Deputy Palazzolo. Your Honors, I am out of time now. Well, we won't punish you for being out of time. Thank you, Your Honor. May it please the Court, Susan Blitch for Sand City and Chief J. Michael Klein. Your Honors, Sand City, in Sand City Defendant's case, the district court did not address whether or not the statute of limitations accrued earlier as to those defendants. Inasmuch as we are tied with the county defendants, we are arguing that the December 17, 2001 decision to discipline was a final decision. I think the issue here is the appellant is looking at a private grievance procedure versus when the final decision was made. The Board of Supervisors for Monterey County does not regularly make decisions concerning disciplining peace officers. That decision is made by the sheriff's department, and in this case, the sheriff. Unless the peace officer chooses to go to the grievance procedure on the board. What we are talking about is a private grievance procedure designed in cases of complaints to possibly address decisions. Well, I don't know what you mean by private grievance procedure. Counsel said some people are represented by a union, some by a unit. And if there were people who weren't represented by a unit, they would have an individual right. And the highest authority in the county, the decision-making body, is the Board of Supervisors. And I don't know that the record tells us this, and all I'm going on is what counsel has said. But I – and it might be helpful if we had the material of whatever the regulations are, the governing rules. But my impression at this point is that any employee has a right to go to the Board of Supervisors, either through a grievance procedure or directly, to appeal a decision by a department. Now, I don't understand why that makes it some kind of private remedy as opposed to a public remedy. I mean, the Board's acting in its capacity as the final decision-maker of the county. I think our argument works if we were arguing a failure to exhaust remedies in a situation where you had to take certain administrative steps before you could file a civil suit. This is not the case. Deputy Palazzolo had the right to file a civil suit the day after the final decision was made to implement the discipline. And that was made on December 17, 2001. I think the McCoy case and the Delaware v. Ricks case are directly poignant. Well, Delaware v. Ricks, maybe you can tell me. They say there that the final body had already made a decision, and the grievance procedure in that case was a remedy for an prior decision already made, not an opportunity to influence that decision in advance. Now, here the grievance was not only an opportunity to, but did influence the final decision of the final decision-maker. So why isn't that a different matter than to be like Riggs, Griggs, whatever, Ricks, to be like Ricks, the Board would have had to have already made a decision and then said, well, we're willing to reconsider based on a grievance. Here, this is on your way up to the final decision-maker. Why isn't it different? I disagree with that interpretation. It's not an interpretation. It's a statement of facts. If you disagree with the facts, tell me where, please. Your Honor, the Board of Supervisors had a right to address the grievance on a decision already made, and I think that's the distinction, that the decision was final and already made. Well, you can say it's final. Let me ask you a different question. We're just sort of talking up in the air. The memorandum of understanding, is that where the rights involved here come from? The memorandum of understanding is something that's bargained with with the Peace Officers Union. Okay. Does it say anything about what decision is the final decision? That is out of the scope of the knowledge of the Sand City defendants. And I would defer to county counsel for that. Well, as I read it, it does. I mean, so the question, the question is, then what, if the sheriff's decision were the final decision, then there is, what's the right or what's the relationship between that decision and the Board of Supervisors' review after arbitration? I would argue that the Board of Supervisors has a right to look at grievances from any employee through the arbitration process and make a decision to address those grievances, not to make final decisions undisciplined. And I notice I have also gone way over time. Thank you. Thank you, Your Honors. I just wanted to underline a couple of points that were made, and that was the proposed action assumes this right through the MOU, and that the MOU process is a process has built in, within it, that the final decisionmaker will adopt that. And that's what happened here. Mr. Garcia, let me ask you. Well, where? Well, the fact that my client won arbitration and that was adopted by the board. Well, no, but you just said, if I heard you correctly, that the MOU has this procedure built into it.  Well, I don't have the MOU to show you, but that's assumed within the county board. That's what's a contracted right, that they are participating in saying, yes, we'll adopt that arbitration. Let me ask you again. I asked you before, but it seems to me the worst fact for you is that Mr. Palazzolo had already had money taken out of his check. So he'd actually been damaged. I mean, he can try to appeal it and go to the arbitrator or keep his fingers crossed or whatever he wants, you know, to try to get his money back. But I mean, he'd already not only had the letter from the sheriff, but also suffered economic harm. Why doesn't that trigger the statute of limitations? Because he knows that there is, like Norco says, there's this, he knows that there is a future appeal and wants to wait until all the mutually acceptable solutions have been resolved. That's why. The memorandum of understanding, which is, I think we only have part in the except of the record. And I found page 19, I guess, of the memo, something that says the decision of the board shall be final. That's, I gather, the Board of Supervisors. Yes, the Board of Supervisors. Is there anything earlier in the memo about the decision of the sheriff shall be final also? A supervisor manager's decision shall be final and binding. I don't know how to read this thing. I mean, that's why I keep asking for the parties to walk us through it. I mean, because if I understand your position, you're saying never mind the fact that the sheriff made a final decision, never mind the fact that your client was docked and pay. It wasn't final because he did in fact pursue a grievance, which he didn't have to do. And therefore, the statute is somehow told until the Board of Supervisors then makes a final decision to accept or not accept the grievance outcome. Have I got that right? Yes, Your Honor. Okay. Well, where does that come from? As county counsel said, everyone's in, everyone has this, they're in part of a unit or a bargaining. Everyone has that, or as His Honor said, or you could go to the. I know, but how do you get around electrical workers in this context? I mean, it seems to be quite analogous. I'm sorry. I missed part of that. How do you get around electrical workers, which seems to be quite analogous? I think the most analogous is, again, Norco, and that is where the final authority, the State supreme court, finally grants that writ, and the county has to adopt that and have to go forward and give Norco the ability to divide their parcels. What I'm trying to understand also is, does it matter whether there's a grievance procedure? Is this any different than if, and it may well be for nonrepresentative workers, if a department head makes a final decision, in the sense that that's a department's final decision, is there an appeal? And you suppose there was no union, there's no grievance procedure. Can the individual appeal to the board, which is the next highest level and the final level in the county? And does it matter whether you don't have that appeal except as a result of the county's in a memorandum of understanding? All right. I think we'll have to figure this out somehow. Thank you, Your Honor. Thank you. The case is argued. It will be submitted.
judges: Reinhardt, Rymer, Silverman